The judgment appealed from is therefore affirmed, at appellant's cost.

(128 So. 652)

**MALLOUF v. FONTENOT, Sheriff, et al.**
**No. 27724.**

March 1, 1926.

On the Merits May 5, 1930.

H. Gordon Brunson, of Crowley, for defendant-appellant.

Philip S. Pugh, W. J. Carmouche, and J. M. Buatt, all of Crowley, for plaintiff-appellee.

OVERTON, J.

Plaintiff and appellee has moved to dismiss the appeal herein, which is a devolutive one, on the following grounds, to wit:

"(1) That your petitioner is informed and believes that the said transcript was not filed on the return date or in time.

"(2) That the bond was not filed within the period required by law."

The defendant and appellant, K. Moosa, opposes the dismissal of the appeal, contending that the averments, setting forth the grounds for dismissal are too vague and general to support a motion to dismiss, that appellee does not aver that the transcript was not filed on the return day, or in time, but merely avers that she is informed and believes that it was not, and that the motion does not allege ultimate facts as a basis for the dismissal of the appeal, but alleges merely conclusions of law, and hence is insufficient.

We gather, with the aid of appellee's brief, that the facts upon which she bases her motion to dismiss are: That prior to the return day, fixed by the trial judge, appellant applied to this court for further time within which to file the transcript of appeal; that this court extended the return day to February 8, 1926; that the transcript was filed here on January 26, 1926, within the time as extended, though after the expiration of the return day, fixed by the district judge, which was January 11, 1926; that the order of this court extending the return day to February 8, 1926, is null and void, for the reason that, when this court granted the extension, the appellant had not furnished his appeal bond, and hence that this court was not vested with jurisdiction over the appeal, when it extended the return day, and that, the order of extension being null and void, the filling of the appeal bond, on January 22, 1926, was not timely, and the filing of the transcript here on January 26, 1926, was too late, the only valid return day having expired.

If appellee so contends, and we think that she does, she should have set forth her grounds for dismissal with more particularity than she has. Vague and general allegations are not sufficient to support a motion to dismiss. Thus, in Bordes v. Bank of St. Bernard, 141 La. 144, 74 So. 884, the grounds for the dismissal of the appeal were:

"(1) That said appeal was not taken and filed within the required delay as fixed by law.

"(2) That the transcript herein filed is not complete, and does not contain all the documents pertaining to same.

"(3) That all parties were not made and cited to this appeal.

"(4) That the certificate of the clerk is not such as the law requires, as it shows certain documents as not being included in the transcript."

The court, in that case, considered the first, second, and fourth grounds, stated above, too vaguely and indefinitely pleaded to be noticed, and said:

"We learn from the brief that the first of these grounds of dismissal is based upon the fact that the bond of appeal was filed more than 12 months after the date of the judgment. As an allegation of that fact the language of the motion to dismiss is too vague and general. Vague and general allegations will not support a pleading in this court any more than in the trial court. The same generality and vagueness is found in the language of the second and fourth grounds. These three grounds are not stated with sufficient particularity to call for consideration. * * * *"

In the case at bar, not only is the first ground for dismissal too vaguely pleaded, but, moreover, the mere fact that appellee was informed and believes that the transcript was not filed on the return day or in time does not justify the dismissal of the appeal. Facts showing that the transcript was not filed in time, together with facts showing the nullity of the order of extension, which order is not even mentioned in the motion, should have been alleged. The second ground for dismissal is not only too vaguely pleaded, but, moreover, merely states the legal conclusion of the pleader without stating a single fact justifying that conclusion, or alleging the nullity of the order of extension, relied upon in the brief filed. See section 2 of rule IX, 136 La. x.

For the foregoing reasons we are of the opinion that the grounds set forth for dismissal have not been pleaded with sufficient particularity to entitle appellee to the relief sought, if she be entitled to the relief at all.

The motion to dismiss is therefore denied.

On the Merits.

ROGERS, J.

This is an appeal by one K. Moosa from a judgment perpetuating a preliminary injunction obtained by Mrs. Lillian Mallouf Nacol against the sale under executory process of certain real estate belonging to the marital community existing between plaintiff and her husband, Alexander Nacol. The judgment also decreed that Moosa, plaintiff in executory process, never had title to the mortgage notes sued on, which notes had been extinguished by payment; and that plaintiff was entitled to claim and exercise her homestead rights on the property seized. The right was reserved to plaintiff to sue for the damages caused by the illegal seizure.

The appellant has not appeared in this court either by oral argument or by brief to support his appeal. Our conclusion, after an examination of the record, is that there is no merit in it.

On September 9, 1919, Alexander Nacol, the husband in community of the plaintiff, Mrs. Lillian Mallouf Nacol, purchased a certain piece of real property in the city of Crowley from one Joseph John. The purchase price of the property was $2,750, of which $1,000 was paid in cash, and the remainder was represented by three promissory notes of the purchaser, one for $750 and two for $500 each, payable on or before one, two, and three years after date. The property was taken possession of and occupied by the purchaser as a homestead. About the month of April, 1923, Alexander Nacol deserted his wife and five minor children, going to Syria, his native country, where he remained for about a year. Upon his return to Crowley, plaintiff made an affidavit against him for nonsupport. Nacol then came to see his wife, told her he would do what was right, in-

duced her to withdraw the affidavit, and when that was done again abandoned her and his children.

On April 16, 1924, plaintiff appeared before a notary public and made a designation and declaration of the property as a family home, which designation and declaration she caused to be recorded in the parish records; all as provided by Act No. 35 of 1921 (Ex. Sess.). Subsequently, namely, on May 27, 1924, K. Moosa, a resident of the parish of St. Landry, alleging that he was the holder for value and before maturity of the three notes, which were unpaid, given by Alexander Nacol to Joseph John as part of the purchase price, obtained an order for executory process for the purpose of seizing and selling the property to satisfy his alleged claim.

Mrs. Lillian Mallouf Nacol successfully enjoined these proceedings. As the basis for injunctive relief, plaintiff alleged her marriage to Alexander Nacol; that the property in Crowley was purchased during the marital community; that her husband had left her and his five minor children, issue of their marriage, and had refused to support them for more than a year prior to the institution of the executory proceedings; that the property in question had since its purchase been occupied by her and her children, and by her husband previous to his departure, as a home; and that it was all the immovable property owned by the marital community.

Plaintiff further averred that she had no property save a small stock of groceries of the value of a few hundred dollars out of which she endeavored to support her family; that the first and second notes sued on were paid by her husband out of community funds to S. Nacol, who claimed to own the notes at one time, and the third note was paid by her husband Alexander Nacol from the proceeds of the sale of certain separate property of plaintiff which she had turned over to him; that the said notes, being extinguished by payment, could not be the basis for executory process.

Plaintiff further averred that she had filed a declaration of a homestead in accordance with the terms of Act No. 35 of 1921 (Ex. Sess.), in which she had selected the property in question as her homestead, which property she was occupying as a home with her children; that the declaration was filed for the purpose of preventing her husband from selling the property; that she verily believed that it was the discovery of the filing of this declaration that forced her husband to resort to the foreclosure proceedings instituted by K. Moosa, who was his brother-in-law, in order to accomplish indirectly the sale of the property that he could not sell directly; and plaintiff alleged a fraudulent conspiracy of Moosa, plaintiff in executory process, with her husband, Alexander Nacol, for the purpose of defrauding her of her homestead rights.

█ The testimony shows that the three notes given in part payment of the purchase price of the property were paid to Joseph John, the vendor in the sale to Alexander Nacol. The first two notes were paid at their respective maturities. The first note was paid by a check dated September 28, 1920, drawn by A. Nacol to the order of Joseph John. The second note was paid to Tom John, for account of Joseph John, by three checks drawn to his order dated September 19, 1921, one for $519.11, signed by Mrs. A. Nacol, the plaintiff herein, and the other two, aggregating $60.89, signed by A. Nacol. This note was actually marked "Paid" across its face. The third note was paid April 23, 1923, to the First National Bank of Crowley where

it had been deposited for collection by Joseph John. This note was apparently paid by Sam. J. Nacol, a brother of plaintiff's husband, Alexander Nacol.

The testimony shows that plaintiff received $1,500 from the sale of a piece of real estate owned by her separately in the town of Eunice. She testified that from the proceeds of this sale she gave her husband $400 towards the payment of the first note; and that the second note was paid out of her funds on deposit in the savings bank, as evidenced by the check for $519.11 signed by her to the order of Tom John. Moosa, the defendant in injunction, testified, at first, that he gave his brother, Alexander Nacol, the money to take up these two notes, which gift was made in cash. Later on, in his testimony, he showed that he never gave Alexander Nacol any money at all personally, but, after the third note was paid, claimed that he gave Sam. J. Nacol a check for $650 to reimburse him for the amount he had advanced in taking up this note. Moosa also testified that on each occasion when the first two notes were paid they were delivered to him by Alexander Nacol. He also testified that, when the delivery of the second note was made to him, it was not marked "Paid." The testimony as to the delivery of the notes is contradicted by the testimony of Sam. J. Nacol, who stated that all three notes were delivered to him by the First National Bank of Crowley, on April 23, 1923, when he paid the third note. On the same day, namely, April 23, 1923, Sam. J. Nacol signed a receipt, acknowledging that he had received from A. Nacol the sum of $1,250 to cover in full mortgage note No. 1 for $750, and mortgage note No. 2 for $500. No explanation is offered by the appellant, Moosa, why A. Nacol should have paid Sam. J. Nacol the amount of these two mortgage notes, if he (Moosa) had ad-

vanced the money to A. Nacol for that purpose. And no explanation is offered by Sam. J. Nacol why, if Alexander Nacol was in possession on April 23, 1923, of the sum of $1,250, Alexander Nacol, and not Sam. J. Nacol, should not have paid the bank the amount due on the principal and interest of the third mortgage note. Sam. J. Nacol testified that, after he had paid the third note, he received the three notes from the bank and delivered them to K. Moosa, receiving from Moosa his check for $650. This check, however, was not produced on the trial of the case; some evidence being introduced to show that it had been mislaid by the attorney of Moosa. Moreover, the testimony of Sam. J. Nacol as to the manner in which he came into possession of the funds with which he made the deposit in bank to meet his check given in payment of the third note is wholly unsatisfactory and unconvincing. The deposit was made on the same day the check was issued.

The plaintiff, Mrs. Lillian Nacol testified that her husband kept the first two notes in an iron safe; that in respect to the third note her brother-in-law, Forrest Nacol, asked her if she had any money with which to pay the last note; that her brother-in-law Sam Nacol and her husband went to the safe and got the money and counted it out on the table; that Sam Nacol and her husband went to the bank to meet Forrest Nacol, and, when they came back, she saw that Sam Nacol had three note, and "they made some sort of paper and after that they left." Forrest Nacol did not testify in the case. Neither did plaintiff's husband, Alexander Nacol, who disappeared just before the case was tried, and no one, apparently, knew where he was.

The story told by the defendant in injunction and his witnesses is so confused, con-

tradictory, and improbable that we are compelled, as was the judge of the district court, to discredit it. The conclusion is inescapable that plaintiff's husband, Alexander Nacol, with the assistance of his near relatives, is attempting to use the courts for the purpose of circumventing his wife in her effort to protect her homestead rights under the provisions of Act No. 35 of 1921 (Ex. Sess.). This cannot be permitted.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.